IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MARIA D. GARCIA CASAS,**

    **Plaintiff,**

    vs.                                                                                           Civ. No. 17-1091 SCY

**NANCY A. BERRYHILL, Acting**
**Commissioner of the Social Security**
**Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 13) filed February 8, 2018, in support of Plaintiff Maria D. Garcia Casas' ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits. On April 25, 2018, Plaintiff filed her Motion to Reverse and Remand for Rehearing With Supporting Memorandum ("Motion"). Doc. 19. The Commissioner filed a Response in opposition on June 15, 2018 (Doc. 21), and Plaintiff filed a Reply on July 20, 2018. Doc. 22. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 4, 8, 9.)

## I. Background and Procedural Record

Claimant Maria D. Garcia Casas ("Ms. Casas") alleges that she became disabled on March 30, 2011,[2] at the age of forty-eight because of stage I thyroid cancer and diabetes. Tr. 58 149, 449.[3] Ms. Casas completed the sixth grade in 1974, speaks only Spanish, and worked as a thrift store clothes sorter; restaurant cook and ironer; and cleaners, dry cleaners, and tuxedo rental ironer. Tr. 431-44, 448-50.

On March 3, 2012, Ms. Casas protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.[4] Tr. 363-64. Ms. Casas' application was denied on May 3, 2012. Tr. 104, 106-10. It was denied again at reconsideration on August 2, 2013. Tr. 116-27, 142, 175-77. Ms. Casas requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ Eric Weiss initially conducted a hearing on December 29, 2014. Tr. 52-79. On March 2, 2015, ALJ Weiss issued an unfavorable decision. Tr. 143-59. On March 2, 2015, the Appeals Council remanded the case to ALJ Weiss with instructions to consider Ms. Casas' maximum residual functional capacity during the entire period and to provide rationale with specific references to evidence of record, including weighing the opinion evidence and developing evidence from the claimant's treating source. Tr. 166-67. The Appeals Council further instructed the ALJ to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the

---

[2] Ms. Casas initially alleged an onset date of February 15, 2010, but requested at the Administrative Hearing that the date be amended to March 30, 2011. Tr. 58, 149, 445.

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 13) that was lodged with the Court on February 8, 2018.

[4] Ms. Casas concurrently filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq*., which was granted at reconsideration. Tr. 128-40. Ms. Casas was found to be disabled as of March 1, 2013. Tr. 139. At issue here is whether Ms. Casas was disabled from her amended alleged onset date through her date of last insured and therefore entitled to Title II disability benefits.

claimant's occupational base. *Id.* ALJ Weiss conducted a second hearing on September 8, 2016. Tr. 80-103. Ms. Casas appeared in person with her attorney representative Michael Armstrong. *Id.* On October 21, 2016, the ALJ issued an unfavorable decision. Tr. 30-45.

On December 22, 2016, Ms. Casas submitted additional evidence to the Appeals Council from her treating physician related to her physical and mental impairments. Tr. 23-29. On September 5, 2017, the Appeals Council issued its decision denying Ms. Casas' request for review and upholding the ALJ's final decision. Tr. 1-6. On November 3, 2017, Ms. Casas timely filed a Complaint seeking judicial review of the Commissioner's final decision. Doc. 1.

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[5] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s)

---

[5] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

3

        or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3)     At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)     If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point

in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.  **Standard of Review**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. Analysis

The ALJ determined that Ms. Casas was not disabled from her amended alleged onset date through her date of last insured. Tr. 40-45. In making this determination, the ALJ found at

step one that Ms. Casas met the insured status requirements through June 30, 2012, and that she had not engaged in substantial gainful activity since her amended alleged onset date. Tr. 39. At step two, the ALJ found that since her amended alleged onset date, Ms. Casas had severe impairments of diabetes mellitus type II, peripheral neuropathy, diabetic gastroparesis, and thyroid cancer status-post thyroidectomy. Tr. 39. He also found a nonsevere impairment related to Ms. Casas' visual problems. *Id.* The ALJ, however, determined that Ms. Casas' impairments did not meet or equal in severity one of the listings described in Appendix 1 of the regulations. Tr. 40. As a result, the ALJ proceeded to step four and found that through the date last insured, Ms. Casas had the residual functional capacity to

> lift and carry 20 pounds occasionally and 10 pounds frequently and push and pull the same. Walk and stand for 6 hours per 8 hour work day and sit for 6 hours per 8 hour workday with normal breaks. Except occasionally climb ram[p]s and stairs; never climb ladders, ropes or scaffolds; occasionally stoop, crouch, kneel and crawl; frequently handle and finger with the bilateral upper extremities; and must avoid more than occasional exposure to unprotected heights. I find that this is a limited range of light work as contained in the light exertional level as defined by 20 CFR 404.1567, 20 CRF 416.967 and SSR 83-10.

Tr. 40-43. The ALJ concluded at step four that Ms. Casas was capable of performing her past relevant work as a sales attendant and was, therefore, not disabled. Tr. 43. At step five, the ALJ made alternative findings and determined that based on Ms. Casas' age, education, work experience, RFC, and the testimony of the VE, there were jobs that existed in significant numbers in the national economy that she could perform. Tr. 44-45.

Ms. Casas asserts four arguments in support of her Motion as follows: (1) the Appeals Council committed legal error in determining that the additional evidence Ms. Casas submitted was not new, material, and chronologically pertinent; (2) ALJ Weiss erred in failing to apply SSR 83-20 and to consult with a medical advisor to determine Ms. Casas' onset date; (3) ALJ Weiss failed to perform the requisite analysis under *Winfrey* at step four in determining that

6

Ms. Casas could perform her past relevant work; and (4) ALJ Weiss failed to perform the requisite analysis under *Trimiar* at step five in determining that a significant number of jobs existed in the national economy. Doc. 19 at 14-27. Because the Appeals Council failed to consider the treating physician evidence Ms. Casas submitted, the case will be remanded so that the Appeals Council may reevaluate the ALJ's decision in light of the completed record.

### A. Consideration of Additional Evidence

On October 27, 2016, treating physician Elizabeth Grant, M.D., of UNM Health Sciences Center, prepared a *Medical Assessment of Ability To Do Work-Related Activities (Physical)*, a *Medical Assessment of Ability To Do Work-Related Activities (Non-Physical)*, a *Medical Assessment of Ability To Do Work-Related Activities (Mental)*, and two listings forms on Mr. Casas' behalf.[6] Tr. 24-29. On December 22, 2016, Ms. Casas submitted the additional evidence to the Appeals Council. Tr. 23. The Appeals Council denied review of the additional evidence explaining that

> [y]ou submitted a Medical Assessment of Ability To Do Work-Related Activities (Physical, Non-Physical and Mental) from Elizabeth Grant, M.D. on October 27, 2016 (8 pages). The Administrative Law Judge decided your case through June 30, 2012. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before June 30, 2012.

Tr. 2.

In completing the functional assessment forms, the instructions directed Dr. Grant to consider Ms. Casas' "medical history and the chronicity of findings as **2012 to current examination**." Tr. 24-27 (emphasis in original). In doing so, Dr. Grant assessed as to Ms. Casas' ability to do work-related physical activities that Ms. Casas could not maintain

---

[6] Dr. Grant opined that Ms. Casas met the criteria for Listing 12.04 *Affective Disorders* and 12.06 *Anxiety-Related Disorders*. Tr. 28-29.

7

physical effort for long periods without a need to decrease activity or pace, or to rest intermittently because of pain, fatigue, and dizziness. Tr. 24. Dr. Grant further assessed that Ms. Casas could occasionally lift and/or carry less than 5 pounds; could frequently lift and/or carry less than 5 pounds; could stand and/or walk less than 2 hours in an 8-hour workday; could sit less than 4 hours in an 8-hour workday; had unlimited push and/or pull, other than as shown for lift and/or carry limitations; could not do repetitive handling or fingering; had limited reaching all directions; could never kneel; and could occasionally stoop, crouch and crawl. *Id.* Finally, Dr. Grant noted that any nonphysical work activities would be affected by symptoms like pain, fatigue, sleep disturbances, visual difficulties, neurocognitive problems, fainting, dizziness, or mental problems. *Id.* Dr. Grant indicated diabetic neuropathy as the basis of her assessment. *Id.*

As for Ms. Casas' ability to do work-related mental activities, Dr. Grant assessed that Ms. Casas suffered from a severe pain producing impairment, injury or sickness, that caused sleep disturbances and fatigue, and that required Ms. Casas to rest or lie down at regular intervals. Tr. 25. Dr. Grant also assessed that Ms. Casas had *moderate* limitations in her ability to (1) understand and remember very short and simple instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended period (*i.e.,* 2-hour segments), (4) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; (5) sustain an ordinary routine without special supervision; (6) make simple work-related decisions; (7) complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; (8) be aware of normal hazards and take adequate precautions; and (9) set realistic goals or make plans independently of others. Tr. 25-27.

8

Dr. Grant further assessed that Ms. Casas had *marked* limitations in her ability to (1) remember locations and work-like procedures; (2) understand and remember detailed instructions; and (3) travel in unfamiliar places or use public transportation. (Tr. 26-27.)

Ms. Casas argues that the Appeals Council improperly determined that the additional submitted evidence was not chronologically pertinent. Doc. 19 at 18. In support, Ms. Casas asserts that the additional evidence makes a direct reference to the relevant period of time and is supported by Dr. Grant's treatment notes and other medical record evidence. *Id.* The Commissioner concedes that Ms. Casas established care with Dr. Grant on May 10, 2012, and that the medical source statements "thus appear to relate to the period on or before June 30, 2012, the date last insured." Doc. 21 at 18. However, the Commissioner contends that Ms. Casas' argument is misplaced because under the current regulations the Appeals Council will review a case based on additional evidence if, in addition to meeting other requirements, there is a reasonable probability that it would change the outcome of the decision. Doc. 21 at 17-19. The Commissioner contends that Ms. Casas failed to demonstrate a reasonable probability that the additional evidence would change the outcome of the decision. *Id.* at 17-18. The Commissioner adds that even if the additional evidence were considered, Dr. Grant's assessments are not supported by the record during the relevant period. *Id.* at 19. As such, the Commissioner contends that the ALJ's decision remains supported by substantial evidence. *Id.* In her Reply, Ms. Casas asserts that the Commissioner's argument amounts to *post hoc* rationalization because the Appeals Council did not object to the additional evidence on whether there was a reasonable probability that it would change the outcome of the decision, but rather its chronological pertinence. Doc. 22 at 3.

The question before the Court is whether the Appeals Council should have considered the additional evidence in Ms. Casas' request for review. Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to our *de novo* review. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (citing *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003)). "[O]ur general rule of *de novo* review permits us to resolve the matter and remand if the Appeals Council erroneously rejected the evidence." *Krauser*, 638 F.3d at 1328 (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)).

Additional evidence should be considered only if it is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision. 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).[7] Evidence is new "if it is not duplicative or cumulative" and material "if there is a reasonable possibility that it would have changed the outcome." *Threet,* 353 F.3d at 1191. Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ; *i.e.,* the period on or before the date of the ALJ's decision. *Chambers*, 389 F.3d at 1142.

> If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision. If the evidence does qualify and the Appeals Council considered it "in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the

---

[7] This regulation changed effective January 17, 2017, with compliance not required until May 1, 2017. *See* 81 FR 90987-01, 2016 WL 7242991 (F.R.) (Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process). The changed regulation added, *inter alia,* the requirement that additional evidence should be considered if "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). The requirement to provide evidence suggesting a reasonable probability of changing the outcome of the ALJ's decision was not in existence at the September 8, 2016, hearing in this case, or at the time Ms. Casas submitted his additional evidence on December 22, 2016. During that time frame, the regulations required the Appeals Council to consider new and material evidence submitted if it related to the period on or before the date of the hearing decision, to evaluate the entire record including new and material evidence submitted, and to review the case if it found that the decision at issue is contrary to the weight of the evidence in the record, including the new evidence. 20 C.F.R. §§ 404.970, 416.1470 (2015); *Threet*, 353 F.3d at 1191. The parties have not raised or briefed the issue of whether the current regulation retroactively applies here.

substantial-evidence standard." Finally, if the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings.

*Chambers*, 389 F.3d at 1142 (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)). The Court addresses all three criteria as part of its *de novo* review.

It is undisputed that the additional evidence is new because it is not duplicative or cumulative. Dr. Grant's assessments were not available to the ALJ at the time he made his decision. Additionally, Dr. Grant is a treating physician who provided care to Ms. Casas from May 10, 2012, through July 18, 2013, for, *inter alia,* her diabetes mellitus type II and peripheral neuropathy. Tr. 574-79, 651-53, 660-62, 669-76. Further, there was no other treating source opinion evidence in the medical evidence record that specifically addressed Ms. Casas' ability to do work-related physical activities based on her severe impairments and the associated pain prior to her date of last insured. As such, the evidence is neither duplicative or cumulative.

It is also undisputed the additional evidence relates to the period at issue. Although Dr. Grant completed the assessments after the ALJ's decision, they nonetheless make a direct reference to the time period adjudicated by the ALJ; *i.e.,* as from 2012 to current examination.[8] (*Id.*) *See* HALLEX I-3-3-6(B) (noting that there are circumstances when evidence dated after the ALJ decision relates to the period at issue, such as when a statement makes a direct reference to the time period adjudicated). More importantly, they also directly relate to Dr. Grant's treatment notes and other medical record evidence generated during the relevant period of time. *See Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991) (finding that proffered evidence must relate to the time period of which the benefits are denied). Further, as previously noted, the Commissioner concedes this issue. Doc. 21 at 18.

---

[8] The adjudicated period is March 30, 2011, the amended alleged onset date, through June 30, 2012, the date last insured.

Finally, the additional evidence is material and creates a reasonable possibility that the outcome of the case would change.[9] At issue in this case is whether the ALJ improperly determined that Ms. Casas was not disabled prior to her date of last insured. The additional evidence directly addresses this issue. As noted, Dr. Grant began treating Ms. Casas beginning May 10, 2012, for, *inter alia*, type 2 diabetes mellitus with peripheral neuropathy. Tr. 675-76. *Id.* Dr. Grant's treatment notes indicate that Ms. Casas complained of and was being treated for pain in her arms and legs, and that she dropped things due to weakness in her hands. Tr. 651-63, 672-74, 669-71. Concurrent treatment notes from the UNM Diabetes Comprehensive Center similarly noted that Ms. Casas complained of paresthesias in her feet, numbness in her toes, and tingling in her hands related to her diabetes. Tr. 682-85, 687-89, 762-65. Additionally, in the months prior to Ms. Casas establishing care with Dr. Grant, Ms. Casas was treated by a different UNM Health Sciences primary care provider, David Dominguez, M.D., who similarly noted peripheral neuropathy and associated pain and numbness in both feet as early as January 25, 2011, a date before Ms. Casas' amended alleged onset date of March 30, 2011.[10] Further, the ALJ did not rely on any medical source opinion evidence when he made his RFC determination.[11] Here, the additional evidence is a medical source opinion from a treating

---

[9] The standard under Tenth Circuit case law for materiality is whether there is a reasonable *possibility* that additional evidence would have changed the outcome of the case. *Threet*, 353 F.3d at 1191. That being said, even if the current regulations were to apply and Ms. Casas had to demonstrate a reasonable *probability* that the additional evidence would change the outcome of the decision, *see* fn. 7 *supra*, the probability standard is met here.

[10] Dr. Dominguez's treatment notes are dated from March 2, 2009, through August 22, 2011. Tr. 715-57.

[11] The ALJ relied on the "objective medical evidence of record" to make his determination, which he described as providing evidence of only intermittent "abnormal clinical presentations" during the relevant period of time. Tr. 42. As for the available medical source opinion evidence, the ALJ accorded little weight to the examining State agency medical consultant opinion, Dr. Diana Go, explaining, *inter alia*, that her exam was conducted after the date last insured. Tr. 42-43. Dr. Go opined, *inter alia*, that Ms. Casas could not stand or walk during an eight-hour workday because of dizziness and leg pain. Tr. 633. The ALJ also accorded little weight to the nonexamining State agency medical consultant opinions because they determined that Ms. Casas' alleged impairments were non-severe and the medical evidence record supported otherwise. Tr. 43.

physician, whose opinion generally would be accorded a particular weight because of her "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone[.]" *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). For the foregoing reasons, Dr. Grant's assessments related to Ms. Casas' ability to do work-related physical activities from her severe impairments and associated pain clearly call into question the ALJ's RFC assessment prior to the date of last insured because, if adopted, they would impose greater limitations. The additional evidence, therefore, is material.

Lastly, the Commissioner argues that even if the Court were to find that the additional evidence should have been considered, it would not undermine the ALJ's decision.[12] Doc. 21 at 19. However, in this case, the Appeals Council *did not accept or consider* the new evidence in denying Ms. Casas' request to review the ALJ's decision. Thus, the only question before the Court is whether the Appeals Council should have done so. *Padilla v. Colvin*, 525 F. App'x 710, 712, n. 1 (10th Cir. 2013) (distinguishing the questions before the court when the Appeals Council rejects and does not consider additional evidence in denying review and when the Appeals Council accepts and considers evidence in denying review). As such, it would be improper for this Court to perform a substantial evidence review of the ALJ's decision by evaluating new evidence that was not considered below.

For the foregoing reasons, the Court finds that the additional evidence from treating physical Elizabeth Grant, M.D., is new, material and, chronologically pertinent, and creates a reasonable possibility that it would change the outcome of the ALJ's decision.[13] As such, the Appeals Council erroneously failed to consider it as part of Ms. Casas' request for review.

---

[12] The Commissioner argues that the physical and mental exams during the relevant period of time "typically showed functioning consistent with unskilled light work." Doc. 21 at 19.
[13] *See* fn. 9, *supra.*

13

Therefore, this case must be remanded for the Appeals Council to review the new evidence as required under 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). *Krauser*, 638 F.3d at 1328.

### B. Remaining Issues

The Court will not address Ms. Casas' remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### IV. Conclusion

For the reasons stated above, Ms. Casas' Motion to Reverse and Remand for Rehearing With Supporting Memorandum (Doc. 19) is **GRANTED.**

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge,**
**Presiding by Consent**